**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JEREMIAH SILKOWSKI and SQN CAPITAL MANAGEMENT LLC,**<br><br>**Defendants.** | **26 Civ. 08162 (JSR)** |

**[PROPOSED] ORDER APPOINTING RECEIVER**

**WHEREAS**, this matter has come before the Court upon the filing of a Complaint by plaintiff Securities and Exchange Commission ("Commission") on September 18, 2026, alleging that defendants Jeremiah Silkowski ("Silkowski") and SQN Capital Management LLC ("SQN Capital") violated and/or aided and abetted violations of Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rules 206(4)-2 and 206(4)-7, thereunder;

**WHEREAS**, defendants Silkowski and SQN Capital have consented, without admitting the allegations of the complaint, to the entry of final judgments imposing all of the injunctive and monetary relief sought by the complaint;

**WHEREAS**, Silkowski is the President, Chief Executive Officer, Chief Compliance Officer and indirect majority owner of SQN Capital;

**WHEREAS**, SQN Capital is the investment manager and investment advisor for SQN Alternative Investment Fund III L.P. ("AIF III"); SQN AIF IV L.P. ("AIF IV"); SQN Portfolio

Acquisition Company LLC ("PAC") and the SQN Special Opportunity Fund, LLC ("SOF") (together, the "Funds");

**WHEREAS**, SQN Managing Member, LLC ("SQN Managing Member") is the managing member of (i) SQN AIF III GP, LLC, the general partner of AIF III; (ii) SQN AIF IV, GP, LLC, the general partner of AIF IV; (iii) the PAC; and (iv) the SOF;

**WHEREAS**, the Funds own, or owned, in their respective investment portfolios interests in various assets and financing arrangements ("Portfolio Assets");

**WHEREAS**, AIF III has approximately 353 limited partner investors; AIF IV has approximately 1,506 limited partner investors; PAC has approximately 7 member investors; and SOF has approximately 51 noteholder investors;

**WHEREAS,** pursuant to the limited partnership and other agreements governing the Funds, SQN Managing Member controls or possesses the direct or indirect ability to control the remaining Portfolio Assets held by the Funds;

**WHEREAS**, the Funds' governing agreements provide that the Funds are to be liquidated and wound down, and the proceeds of such liquidation be distributed to the Funds' investors, according to a timetable set forth in the Funds' respective governing agreements;

**WHEREAS**, Silkowski and SQN Capital have failed to take the steps necessary to complete the process of liquidating the Funds' assets and distributing the proceeds to the Funds' investors in accordance with the terms of the Funds' governing agreements;

**WHEREAS,** the Commission believes that it is in the best interests of the Receivership Entities (as defined below), and their investors and creditors, to appoint a receiver over (i) each of the Funds; SQN AIF III GP, LLC (the general partner of AIF III); SQN AIF IV GP, LLC (the general partner of AIF IV); and SQN Managing Member (collectively, the "Receivership

Entities”), and (ii) the Receivership Assets (as defined below), in order to contain costs, wind down and liquidate the Funds, and effectuate distributions to the Funds’ investors and creditors and in a timely, orderly and cost-efficient manner;

**WHEREAS** SQN Managing Member and defendants Silkowski and SQN Capital have consented to the appointment of a receiver in this action (“Receiver”) over the Receivership Entities and Receivership Assets on the terms set forth below;

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of the Receiver is necessary and appropriate for the protection of investors; and

**WHEREAS** the Court has subject matter jurisdiction over this action, personal jurisdiction over SQN Capital, and venue properly lies in this District;

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**I. <u>Exclusive Jurisdiction</u>**

1. This Court hereby takes exclusive jurisdiction and possession of all of the assets of the Receivership Entities, including the Portfolio Assets, together with all proceeds thereof (collectively, the “Receivership Assets”) of whatever kind, wherever situated, or whenever obtained.

**II. <u>Appointment of Receiver</u>**

2. Until further Order of this Court, Yann Geron, esq. is hereby appointed to serve without bond as receiver (the “Receiver”) for the receivership estate of the Receivership Entities (the “Receivership Estate”), including the Receivership Assets, to, among other duties and rights set forth in this Order and available under applicable law and without limiting any other provisions of this Order, (a) preserve the status quo to enable the Receiver to perform the duties specified hereunder; (b) ascertain the financial condition of the Receivership Entities and

Receivership Assets; (c) oversee and manage, consistent with the relevant governing documents and applicable law, the Receivership Entities and Receivership Assets; (d) prevent the encumbrance or disposal of the Receivership Assets contrary to the Receiver's mandate; (e) preserve the books, records, and documents of the Receivership Entities and Receivership Assets; (f) propose for Court approval an actionable plan for the liquidation of the Portfolio Assets and a wind down of the Funds' operations; (g) propose for Court approval an actionable plan for the fair and equitable distribution of the net proceeds of the liquidation of the Portfolio Assets and remaining Receivership Assets to the Funds' investors and creditors; and (h) be available to respond to investor inquiries, all as further set forth in this Order.

**III. <u>General Powers and Duties of Receiver</u>**

3. The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the Receivership Entities, and any officers, directors, managers, managing members, and general and limited partners of the Receivership Entities, under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Rule 66 of the Federal Rules of Civil Procedure, except that the Receiver shall conduct a cost/benefit analysis and consult with the Commission staff prior to commencing any affirmative litigation the Receiver may believe to be advisable, subject to the limitation of the Receiver's enumerated litigation powers in Section III(5)(J-K), in connection with the liquidation of the Portfolio Assets.

4. All of the powers derived from any source of any and all officers, directors, managers, managing members, general and limited partners, employees, investment advisers, accountants, attorneys and other agents and advisers of the Receivership Entities are hereby

suspended, except to the extent as may hereafter be expressly granted by the Receiver in its sole discretion and, to the extent necessary (in the sole determination of the Receiver), approved by the Court. The Receiver shall assume and control the operation of the Receivership Entities, and shall preserve all of their assets and claims for the benefit of the Receivership Estate. No person holding or claiming any position of any type with any of the Receivership Entities shall have any authority to act by or on behalf of any of the Receivership Entities, except as may be expressly authorized or delegated by the Receiver in writing.

5. Without limiting the other provisions in this Order, the Receiver shall have the following general powers and duties:

A. Take and retain immediate possession and control of all Receivership Assets and all books, records and documents of the Receivership Entities, wherever located, related to the Receivership Assets, and to collect, recover, receive and take into possession from third parties, all Receivership Assets and records relevant thereto;

B. Manage, control, operate and maintain the Receivership Entities and hold in the Receiver's possession by and through the Receivership Estate, custody and control of all Receivership Assets, subject to the other provisions of this Order;

C. Take any action which, prior to the entry of this Order, could have been taken by the officers, directors, managers, managing members, and general and limited partners, and agents of the Receivership Entities, acting in their respective capacities;

D. Take such action as necessary and appropriate for the preservation of the Receivership Estate and Receivership Assets and to prevent the dissipation or concealment of the Receivership Assets;

E. Conduct a prompt and orderly liquidation of the Receivership Entities and the

Receivership Assets in a manner calculated to best serve the interests of the Funds' investors and creditors and the Receivership Estate;

F. Have exclusive control of, and be made the sole authorized signatory for, all accounts at any bank, brokerage firm or financial institution that has possession or control of any Receivership Assets; *provided, however,* that the Receiver may from time to time designate additional signatories as determined in the Receiver's sole discretion;

G. Pay from the Receivership Assets necessary expenses required to preserve and administer the Receivership Assets and Receivership Estate, but in no event shall the Receiver, without prior order of the Court, make any payments or transfers of property of a value in excess of $5,000 (five-thousand dollars), except that the Receiver may, in the Receiver's sole discretion, pay the following fees, costs, expenses and other charges in the ordinary course without regard to the foregoing cap and without prior order of the Court: (i)insurance premiums and related costs, (ii) the fees and costs of Geron Legal Advisors LLC related to administering the Funds and all other expenses necessary to administer and operate the Funds, (iii) the fees and costs of Geron Legal Advisors LLC related to records management, (iv) other routine costs and expenses of the Receivership Estate, to the extent applicable, including, without limitation, those related to: information technology (including maintenance of hardware and software), water, electric, telephone, sewage, garbage, trash removal, record storage, and other utilities and services, and (v) all other costs and expenses authorized by this Court pursuant to this Order or any other order of this Court;

H. Locate and bring into the Receivership Estate by all reasonable means Receivership Assets that may have been conveyed to, or are under the possession and

control of, third parties or otherwise outside the immediate control of the Receivership Entities;

I. Engage and employ agents, claim and noticing agents, persons, firms and other persons and entities, including accountants, attorneys, experts, liquidators, brokers, traders, or auctioneers (collectively, "Retained Personnel"), to assist in the carrying out of the Receiver's duties and responsibilities hereunder, subject to prior order of the Court, and pay Retained Personnel in accordance with the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions"), as modified by this Order;

J. Defend all suits, actions, claims and demands which may now be pending or which may be asserted against the Receivership Entities (in the name of the Receivership Entities and/or the Receiver), the Receivership Assets, the Receiver or the Receivership Estate;

K. Commence, maintain and pursue actions against counterparties to any of the Receivership Entities to enforce any legal, equitable, and/or contractual obligations based on law or equity in any state, federal, or foreign court (including in the name of the Receivership Entities), as the Receiver deems necessary or appropriate in discharging the Receiver's duties as Receiver and maximizing recoveries for investors and creditors of the Receivership Entities. For the purposes of this paragraph, Silkowski shall not be considered to be a counterparty as a result of his managerial role with respect to the Receivership Entities and their affiliates;

L. Sell, assign, transfer or otherwise dispose of any assets of the Receivership Entities either directly or through one or more Retained Personnel, subject to approval by

this Court with respect to any material assets;

M. Propose to the Court an actionable plan to liquidate the Portfolio Assets and remaining Receivership Assets for the benefit of the Funds' investors and creditors and the Receivership Estate, and to wind down the Funds' operations ("Liquidation Plan");

N. No later than forty-five (45) days after completion of the Liquidation Plan, propose to the Court a plan to distribute the net proceeds of the Liquidation Plan and other available Receivership Assets (subject to appropriate reserves) to investors and creditors of the Funds ("Distribution Plan") that shall include provisions for (i) an initial distribution to be made by the Receiver, (ii) interim distributions to be made by the Receiver from time to time, (iii) a final distribution to be made by the Receiver, (iv) a bar date for the filing of claims in the Receivership Estate against the Receivership Entities and the Receivership Assets and/or for the filing of objections to a schedule of claims prepared by the Receiver for the purpose of making distributions, except that no limited partner, member or noteholder shall be required to file a claim based solely upon such limited partner or member's equity interest, or noteholder's debt interest, in any of the Funds, (v) a claim review and reconciliation process, (vi) a dispute resolution process for resolving any disputes concerning claims or proposed distributions, (vii) creating and funding reserves, and (viii) such other matters as are determined by the Receiver to be reasonably necessary to facilitate or implement the claim and distribution processes, which plan shall be subject to Court approval;

O. Cause the Receiver and its agents to be named as an additional insured on any insurance policies covering the Receivership Estate or Receivership Assets;

P. In its sole discretion, obtain and/or maintain insurance covering the Receivership

Estate, the Receivership Entities and/or the Receivership Assets, and such insurance expense shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Estate;

Q. Consult with any party in interest, including the Commission staff, the defendants, creditors, and investors regarding any Receivership Estate matter; and

R. Take such other action as may be approved by the Court.

## IV. Access to Information, Books, Records and Accounts

6. The Receivership Entities and each of their (including former) officers, directors, managers, managing members, general and limited partners, agents, attorneys, accountants and employees, as well as those acting in their place, are hereby ordered and directed to preserve and, upon request from the Receiver, turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or Receivership Assets; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

7. The Receivership Entities and each of their (including former) officers, directors, managers, managing members, general and limited partners, agents, attorneys, accountants and employees, including Silkowski and SQN Capital, as well as those acting in their place, shall assist and cooperate with the Receiver in his or her efforts to the extent the Receiver deems it necessary to obtain such assistance in order to carry out the obligations, duties and purposes set out in this Order.

8. The Receiver is authorized to open all electronic mail and other electronic communications pertaining to the subject matter of the Receiver's appointment, including texts or instant messages, generated by, directed to, or received by the Receivership Entities, including

all officers, directors and employees thereof, and all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order. To the extent SQN Capital receives any communications pertaining to the Receivership Entities, it will forward those communications to the address provided by the Receiver.

9. All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit, directly or indirectly, of the Receivership Entities that receive actual notice of this Order shall (i) not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities except upon written instructions from the Receiver; (ii) not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court; and (iii) cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V. **Notice to Third Parties**

10. The Receiver shall promptly give notice of the Receiver's appointment to all known past and present officers, directors, managers, managing members, general and limited partners, agents, attorneys, accountants, and employees of the Receivership Entities, as the Receiver deems necessary or advisable to effectuate the operation of the receivership. The Receiver will notify Silkowski of the identities of the persons to whom he has given such notice.

11. All persons and entities owing any obligation or debt to any Receivership Entity

shall, until further ordered by this Court, perform and/or pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the applicable Receivership Entity had received such performance or payment.

12. The Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

13. The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is addressed to, or for the benefit of, the Receivership Entities. The United States Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individuals, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Estate. The Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

14. Subject to payment for services provided, any entity furnishing space, water, electric, telephone, sewage, garbage, trash removal, or any other services to the Receivership Entities shall maintain such service and related account in the name of the Receivership Entity for the benefit of the Receiver and Receivership Estate, or transfer such account to the Receiver, unless instructed to the contrary by the Receiver.

## VI. Injunction Against Interference with Receiver

15. The Receivership Entities, and all persons and entities receiving notice of this Order by personal service, mail, electronic mail, facsimile, regular mail, through electronic case filing notices, overnight courier, or in any other manner consistent with due process, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, that would:

A. Interfere with the Receiver's efforts to take control, possession, or management of the Receivership Entities or any Receivership Assets; such prohibited actions include but are not limited to, taking any action to remove SQN Managing Member or any of its subsidiaries or affiliates as general partner or managing member of any SQN Fund or otherwise interfere with SQN Managing Member's control over any SQN Fund, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

B. Hinder, obstruct or otherwise interfere with the Receiver in the performance of the Receiver's duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information or interfering with any

claim, distribution and/or wind-down plans or processes established by the Receiver;

C. Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against the Receivership Entities or any Receivership Assets, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Receivership Estate or which otherwise affects any Receivership Assets; or,

D. Interfere with or harass the Receiver, or any Retained Personnel, or interfere in any manner with the exclusive jurisdiction of this Court over the Receiver, the Receivership Estate, the Receivership Entities, or the Receivership Assets.

16. The Receiver shall promptly notify the Court and the Commission staff of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VII. <u>Managing Assets</u>

17. The Receiver shall at all times administer the Receivership Assets with the care and diligence that an ordinary prudent individual would use in handling such person's own estate.

18. Subject to the restrictions in paragraph 5(G) and the terms and conditions of the Liquidation Plan, the Receiver may, without further Order of this Court pay expenses that arise in the ordinary course of the Receivership Entities' orderly wind down, on terms and in the

manner the Receiver deems most beneficial to the Receivership.

19. Subject to the terms and conditions of the Liquidation Plan, the Receiver is authorized, without leave of Court, to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Entities, including making legally required payments to investors, creditors, employees, and agents of the Receivership Entities and Receivership Estate, communicating with vendors, landlords, investors, creditors, governmental and regulatory authorities, and others, and preparing and filing all necessary tax returns, as appropriate and necessary for the orderly wind down of the Receivership Entities consistent with 28 U.S.C. §959(b).

20. To the extent required, the Receiver shall take all necessary steps to enable the Receivership Estate to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations.

21. In connection with the execution and performance of the Receiver's duties and authorities provided for pursuant to this Order, at no point shall the Receiver be deemed to be acting as an "investment adviser" as defined in Section 202(a)(11) of the Investment Advisers Act of 1940, as amended (an "Investment Adviser"), or in any other capacity other than as Receiver for the Receivership Estate, and the performance of the Receiver's duties and authorities provided for pursuant to this Order shall not require the Receiver to register as an Investment Adviser with the Commission or any other agency or entity.

## VIII. Investigate and Prosecute Claims

22. The Receiver is authorized, empowered and directed to, subject to the limitation of the Receiver's enumerated litigation powers in Section III(5)(J-K), in its own name or in the name of the Receivership Entities, investigate, prosecute, commence, maintain, defend,

intervene in or otherwise participate in, compromise, settle, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may, in the Receiver's judgment following consultation with Commission staff, be advisable or proper to liquidate, recover and/or conserve Receivership Assets. The Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits and fees, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, damages, injunctive relief, declaratory relief, and such other relief from this Court as may be necessary to enforce this Order.

23. Any and all attorney-client privilege, work product protection, common interest or joint defense privilege, or other privilege or immunity (collectively, the "Privileges") of the Receivership Entities and/or attaching to or arising in or in connection with any of their documents, data or communications (whether written or oral), are hereby transferred and belong exclusively to the Receiver for the benefit of the Receivership Estate. The Receiver may obtain access to privileged information predating this Order by making a request to counsel for SQN Capital and Silkowski, and such access shall not be unreasonably withheld. The Receiver therefore has sole authority, and is hereby empowered, to enforce, waive, assign or release any or all Privileges in the exercise of its duties as Receiver.

## IX. Bankruptcy Filing

24. The Receiver may seek authorization of this Court to file a voluntary petition for relief under Title 11 of the United States Code (the "Bankruptcy Code") for any or all of the Receivership Entities. If any Receivership Entity or any Receivership Asset is placed into a bankruptcy proceeding, the Receiver may become, and may be empowered to operate the entity or asset, as a debtor in possession. In such a situation, the Receiver shall have all of the powers

and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. The Receiver is vested with management authority for the Receivership Entities and the Receivership Assets and may therefore file petitions under the Bankruptcy Code and have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code. *See*, *In re Bayou Group, LLC,* 564 F.3d 541, 548-49 (2nd Cir. 2009).

25. The provisions of Article VII above bar any person or entity, other than the Receiver, from placing any Receivership Entity or any Receivership Asset into bankruptcy without prior leave of Court on motion providing no less than fourteen (14) days' notice to the Receiver and to the Commission.

**X. Conflicts; Liability of the Receiver**

26. The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, on the one hand, and the Receivership Estate and Receivership Assets, on the other hand.

27. Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with the Receiver's fiduciary obligations in this matter, and, if so ordered, all costs and expenses of procuring any such bond or undertaking shall be deemed expenses reimbursable to the Receiver from the Receivership Estate.

28. The Receiver and Retained Personnel are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to any person or entity for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their respective duties and responsibilities.

29. The Receiver and Retained Personnel may rely, and shall be fully protected

personally in acting upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Receiver or such Retained Personnel have no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy themselves that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of Receiver's or Retained Personnel's bad faith, the Receiver or Retained Personnel, as applicable, may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting thereon. The Receiver may consult with legal counsel and Retained Personnel and shall be fully protected in respect of any action taken or suffered by the Receiver in accordance with the opinion or advice of legal counsel or Retained Personnel (whether or not written). The Receiver may at any time seek instructions from this Court concerning the acquisition, management or disposition of the Receivership Assets. None of the Receiver, nor any Retained Personnel, nor their respective affiliates shall be liable (personally or otherwise) to any person (or any predecessor or successor thereto) for any reason whatsoever arising out of matters relating to the Receivership Estate, the execution of or failure to execute the Receiver's duties or the performance or nonperformance of services for the Receivership Estate or the Receiver, except for any liability that is determined by a final order of this Court that is no longer subject to appeal, to have arisen primarily from the gross negligence, willful misconduct, fraud, or willful breach of fiduciary duty of such person, and, for the avoidance of doubt, in no event shall Geron Legal Advisors LLC be responsible or liable for the acts or omissions of the Receiver. Without limiting the generality of the foregoing, the Receiver shall have no liability on account

of the Receiver's sale, transfer, investment or non-investment of any Receivership Assets or any losses with respect to any such sale, transfer, investment or non-investment of Receivership Assets, provided that such sales, transfers, investments are made, or the Receiver's decision not to invest Receivership Assets in any case is made, in accordance with the Liquidation Plan and any express Orders of this Court relating directly to the sale, transfer or investment of assets.

30. The Receiver and Retained Personnel (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, indemnified and held harmless by each of the Receivership Entities and the Receivership Estate, from and against all losses, claims, judgments, costs, expenses, liabilities and reasonable expenses including legal fees (which shall be paid promptly under the indemnity after Court approval as they arise) which such Indemnified Party may incur or may become subject to in connection with any action, suit, proceeding or investigation that is brought or threatened against such Indemnified Party in respect of their actions or inactions regarding the implementation or administration of the Receivership Estate, or the discharge of its duties hereunder, except for any actions that are determined by a final order of this Court that is no longer subject to appeal, to have arisen primarily from the gross negligence, willful misconduct, fraud, or willful breach of fiduciary duty of such person; *provided, however,* that nothing herein shall limit the immunity of the Receiver and Retained Personnel allowed by law or deprive the Receiver or the Retained Personnel of indemnity for any act or omission for which they have immunity.

31. This Court shall retain exclusive jurisdiction over any action filed against the Receiver and/or Retained Personnel based upon acts or omissions committed in their representative capacities or in connection with any action filed by any of them asserting an indemnity claim.

32. In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record, the State Securities Regulators, and the Court of its intention, and the resignation shall not be effective until the earlier of the date on which the Court appoints a successor and thirty (30) days from the date the Receiver shall have given such notice. The Receiver shall then follow such instructions as the Court may provide.

33. No provision of this Order shall require the Receiver to expend or risk his or their own funds or otherwise incur any financial liability in the performance of any of its duties as Receiver hereunder, or in the exercise of any of its rights or powers.

34. Prior to taking any action against the Receiver regarding the Receiver's conduct in his capacity as the Receiver, a person must seek and receive leave of this Court. This Court shall retain exclusive jurisdiction over any action or controversy regarding any matters relating to or arising from the Receiver's role and conduct in such role.

35. This Article XI shall survive the resignation or removal of [Receiver's name] as Receiver and/or any Retained Personnel and the termination of the receivership.

## XI. <u>Recommendations and Reports</u>

36. No later than one hundred and twenty (120) days after the entry of this Order, the Receiver shall file and serve a full report and accounting of Receivership Assets (the "First Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership.

37. The First Status Report shall contain the following:

A. A summary of the operations of the Receiver;

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C. A schedule of all the Receiver's receipts and disbursements with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D. A description of all known Receivership Assets;

E. A description of liquidated and unliquidated claims held by the Receivership Estate and approximate valuations of claims;

F. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations; and

G. Any other information that the Receiver reasonably deems appropriate to include in the First Status Report.

38. For good cause shown, the Receiver may seek leave of Court to extend the time set for the filing of the First Status Report and any Quarterly Status Report. In addition, if requested by the Commission staff, the Receiver is hereby authorized to share with Commission staff a list of all known investors and creditors and the amount of their investments and claims, as applicable, redacted to exclude personally identifiable information.

39. Subsequent to the filing of the First Status Report, the Receiver shall file a quarterly status report (the "Quarterly Status Report") containing substantially the same type of information required to be set forth in the First Status Report. The Quarterly Status Report shall be filed within twenty (20) days of the end of each quarter, except that, the first Quarterly Status Report shall be filed upon the passing of the first full quarter after the First Status Report is filed.

40. On the request of the Commission staff, the Receiver shall provide any documentation that Commission staff deems necessary to meet the Commission's obligations, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

**XII. Fees, Expenses and Accountings**

41. Subject to the specific provisions of this Order, the Receiver need not obtain Court approval prior to the disbursement of Receivership Assets for expenses in the ordinary course of the wind down of the Receivership Estate.

42. Subject to the specific provisions of this Order, the Receiver is authorized to solicit Retained Personnel to assist the Receiver in carrying out the duties and responsibilities described in this Order. The Retained Personnel may include, without limitation, Geron Legal Advisors LLC or other entities of Geron Legal Advisors LLC. The Receiver is hereby expressly authorized to utilize the services of Geron Legal Advisors LLC as Retained Personnel (rather than utilizing other similarly situated or available personnel or professional services firms). In no event shall the Receiver or Geron Legal Advisors LLC be subject to a claim of a conflict of interest or breach of fiduciary duty or any other claim arising as a result of the appointment of any such person in accordance with this provision.

43. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement. For the avoidance of doubt, the term "Retained Personnel" shall include any professionals retained to provide services to or for any Receivership Entity, any Receivership Asset, the Receiver, or the Receivership Estate, and any counsel retained for any purpose.

44. The Receiver and Retained Personnel are entitled to reasonable compensation and

expense reimbursement from the Receivership Assets as described in the Billing Instructions agreed to by the Receiver, as modified by this Order, a copy of which is available at https://www.sec.gov/oiea/Article/billinginstructions.pdf,. Such compensation shall require the prior approval of the Court.

45. Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Assets (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver and Retained Personnel will serve upon counsel for the Commission a complete copy of its proposed Quarterly Fee Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.

46. All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the Receivership Estate. Such cost benefit review may include an evaluation of the results achieved in relation to the costs associated with any particular Receivership Asset. At the close of the Receivership Estate, the Receiver and Retained Personnel will each file a final fee application, describing in detail the costs and benefits associated with all actions pursued by the Receiver or Retained Personnel, as applicable, during the course of the Receivership Estate.

47. Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court in the Commission staff's discretion or such other percentage holdback as the Court may order on its own motion or on the request of the Commission. The Receiver and Retained Personnel may seek authorization for payment of the applicable holdback amount as part of a subsequent Quarterly Fee

Application. Upon approval by the Court of a request to pay any applicable holdback amount, the Receiver shall be authorized pay from the Receivership Assets such approved holdback amount from the Receivership Assets. To the extent any fees or expenses are not approved by the Court, they must be offset against the 20% holdback or be disgorged from the professional as appropriate.

48. Each Quarterly Fee Application shall:

A. Comply with the terms of the Billing Instructions agreed to by the Receiver, as modified by this Order; and

B. Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, as modified by his Order (and the fact that the Receiver may benefit (directly or indirectly) from the compensation paid to Geron Legal Advisors LLC), the Receiver or Retained Personnel, as applicable, has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Assets, or any sharing thereof.

49. At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by Commission staff, and the Receiver and each Retained Personnel shall submit a final application for compensation and expense reimbursement.

50. With respect to any motion or application filed in this case by the Receiver, if no party in interest objects prior to the objection deadline applicable thereto, the Receiver may file a notice of no objection with this Court and request that the Court enter the corresponding order without the need for a hearing.

**SO ORDERED.**

Dated: New York, NY
10/8, 2026

United States District Judge